**UNITED STATES DISTRICT COURT**

**FOR THE EASTERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| **GUSTAVO CORTES,** | **1:18-cv-01355-LJO-JLT** |
| **Plaintiff,** | **MEMORANDUM DECISION AND ORDER RE PLAINTIFF'S MOTION FOR ATTORNEY'S FEES (ECF No. 16)** |
| **v.** | |
| **KERN COUNTY SUPERINTENDENT OF SCHOOLS, VALLEY OAKS CHARTER SCHOOL - TEHACHAPI,** | |
| **Defendant.** | |

## I. <u>INTRODUCTION</u>

Plaintiff Gustavo Cortes ("Mr. Cortes" or "Plaintiff"), on behalf of his daughter A.C., and Defendant Kern County Superintendent of Schools-Valley Oaks Charter School Tehachapi ("KCSOS-VOCS" or "Defendant") reached a settlement as part of an administration due process proceeding brought under 20 U.S.C. § 1415, the Individuals with Disabilities Education Act ("IDEA"). The only issue the parties were unable to agree upon was the amount of attorney's fees owed to Plaintiff's counsel, the Law Office of Andrea Marcus ("LOAM"). The Court has considered the parties' briefs regarding Plaintiff's motion for attorney's fees ("Fee Petition").

For the reasons set forth below, Mr. Cortes's request for attorney's fees is GRANTED in part and DENIED in part.

## II. <u>PROCEDURAL AND FACTUAL HISTORY</u>

A.C. is twenty years old and is diagnosed with "Schizoaffective Disorder mixed typed" and "Autistic disordered, social phobia, generalized." ECF No. 16 at 10. The parties have been engaged in various administrative proceedings regarding A.C.'s "significant mental health needs" and placement at

an appropriate residential treatment center to "address her educationally related social, emotional, and behavioral issues." *Id.* at 1; *see also* ECF No. 19 at 1–6. The parties agreed to place A.C. at the residential treatment center for the San Diego Center for Children ("SDCC") at the end of 2016. *See id.* A.C. aged out of SDCC when she turned nineteen years old. *See* ECF No. 16 at 10; ECF No. 19 at 5.

Issues arose when the parties sought to find a suitable residential treatment center for A.C. *See generally* ECF No. 16 at 5–6; ECF No. 19 at 5–10. First, A.C.'s family resides in Tehachapi, California. ECF No. 16 at 10. Defendant notes there were "no educational options close to [A.C.'s] residence in Tehachapi, California with the necessary mental health supports for [A.C.]." ECF No. 19 at 5.

On May 3, 2018, Defendant offered to fund an individual education evaluation ("IEE"). Gutcher Decl. ¶ 14. On May 6, 2018, Mr. Cortes filed a request for a due process hearing with the Office of Administrative Hearings ("OAH") against KCSOS-VOCS for: (1) violations of the IDEA and related California law; (2) damages and injunctive relief under IDEA; (3) damages for violations of Section 504 of the Rehabilitation Act; and (4) damages for violations of the Unruh Civil Rights Act (Cal. Civ. Code § 51 *et seq.*). ECF No. 16 at 11; ECF No. 16-1 at 1, 11; *see also* ECF No. 19 at 7. In his initial due process complaint, Mr. Cortes sought reimbursement for housing, food, and transportation, including credit card interest; funding for individual therapy, family therapy, and compensatory treatment and therapy as proven at the administrative hearing; and funding for a transition assessment and an individualized education plan ("IEP") to develop a transition plan for A.C. *See id.* On June 8, 2018, Defendant offered to fund the Transitional Assessment. Gutcher Decl. ¶ 14. However, that same day, the Special Education Principal, Sheriden Prince, denied the speech and language IEE, the IEE for a Functional Behavior Assessment ("FBA"), an inclusion assessment, and request for family therapy. ECF No. 16-3 at 11. On June 11, 2018, Mr. Cortes amended his due process complaint to add requests for funding for a speech and language IEE, and an order that Defendant provides compensatory education by a nonpublic agency ("NPA"). ECF No. 16-3.

The parties anticipated a multi-day due process hearing beginning August 22, 2018. ECF No. 16

at 14; ECF No. 16-5 at 3. However, the parties settled the case on August 21, 2018. ECF 16-5 at 10. As part of the settlement agreement, the parties agreed upon: (1) reimbursing Plaintiff for outstanding costs associated with travel, lodging, and food for the 2017–2018 school year; (2) an IEE transition assessment from Dr. Greene not exceeding $5,000; (3) educationally related compensatory transitional services recommended in the assessment if the IEE transition assessment finds deficits; (4) educationally related compensatory education as recommended by Dr. Katz in his current IEE for the 2018 Extended School Year Absence, including Defendant's acknowledgement that family therapy is educationally related for purposes of the settlement agreement; (5) funding for a Speech and Language IEE by Karen Schnee not exceeding $4,500; (6) educationally related compensatory speech and language services recommended in the Speech and Language IEE if the assessment finds deficits; (7) an IEP within 20 days of completing the IEEs to address A.C.'s needs outlined in the assessments; (8) "other educationally related compensatory education, if recommended by Dr. Katz in his IEE Assessment of Student. [Defendant] previously agreed to fund the IEE in May 2018"; (9) funding for an IEE for an FBA by Scott Revlin, BCBA, not exceeding $4,500; (10) mileage reimbursement; (11) compensatory educationally related mental health services recommended by Dr. Katz's IEE; and (12) reasonable attorney's fees. ECF No. 16-5 at 4–6. The parties agreed that A.C.'s parents were the prevailing party for purposes of awarding reasonable attorney's fees. *Id.* at 6. However, the settlement agreement did not establish the amount of Plaintiff's attorney's fees. *See id.* The parties agreed to resolve the amount of attorney's fees in federal court. *See id.* Therefore, Plaintiff filed the instant Fee Petition.

### III. ANALYSIS

#### A.   Legal Standard

"In any action or proceeding brought under [the IDEA], the court, in its discretion, may award reasonable attorneys' fees as part of the costs . . . to a prevailing party who is the parent of a child with a disability." 20 U.S.C. § 1415(i)(3)(B)(i)(I); *Aguirre v. Los Angeles Unified Sch. Dist.*, 461 F.3d 1114, 1117 (9th Cir. 2006). An award of attorneys' fees pursuant to the IDEA is "governed by standards set

forth by the Supreme Court" in *Hensley v. Eckerhart*, 461 U.S. 424 (1983). *Aguirre*, 561 F.3d at 1121. "[T]he spirit and purpose of allowing attorney's fees in cases where parents have been forced to litigate for years against school districts to obtain all or even part of what the Individuals with Disabilities Education Act . . . ." *Park v. Anaheim Union High School Dist.*, 464 F.3d 1025, 1034 (9th Cir. 2006). "[T]he district court has discretion in determining the amount of a fee award." *Hensley*, 461 U.S. at 437.

The Court must first determine a reasonable fee by multiplying "the number of hours reasonably expended on the litigation" by "a reasonable hourly rate." *Id.* "The district court also should exclude from this initial fee calculation hours that were not reasonably expended." *Id.* at 434 (internal quotation marks omitted). After calculating this lodestar amount, the Court can further adjust the lodestar calculation by considering the following nonexhaustive factors:

> (1) the time and labor required, (2) the novelty and difficulty of the questions involved, (3) the skill requisite to perform the legal service properly, (4) the preclusion of other employment by the attorney due to acceptance of the case, (5) the customary fee, (6) whether the fee is fixed or contingent, (7) time limitations imposed by the client or the circumstances, (8) the amount involved and the results obtained, (9) the experience, reputation, and ability of the attorneys, (10) the 'undesirability' of the case, (11) the nature and length of the professional relationship with the client, and (12) awards in similar cases.

*Kerr v. Screen Extras Guild, Inc.*, 526 F.2d 67, 70 (9th Cir. 1975), *abrogated on other grounds by City of Burlington v. Dague*, 505 U.S. 557 (1992); *see also Chalmers v. City of Los Angeles*, 796 F.2d 1205, 1211 (9th Cir. 1986).

"[T]he fee applicant bears the burden of establishing entitlement to an award and documenting the appropriate hours expended and hourly rates." *Hensley*, 461 U.S. at 437. "The party opposing the fee application has a burden of rebuttal that requires submission of evidence to the district court challenging the accuracy and reasonableness of the . . . facts asserted by the prevailing party in its submitted affidavits." *Camacho v. Bridgeport Fin., Inc.*, 523 F.3d 973, 982 (9th Cir. 2008).

**B.      Plaintiff is the Prevailing Party**

"A prevailing party for the purpose of awarding attorney's fees is a party which 'succeed[s] on any significant issue in litigation which achieves some of the benefit the parties sought in bringing the

4

suit.'" *Parents of Student W. v. Puyallup Sch. Dist., No. 3*, 31 F.3d 1489, 1498 (9th Cir. 1994) (quoting *Hensley*, 461 U.S. at 433). A party is "prevailing" where it can "point to a resolution of the dispute which changes the legal relationship between itself and the defendant." *Park v. Anaheim Union High School Dist.*, 464 F.3d 1025, 1036 (9th Cir. 2006).

Here, the parties do not dispute that Plaintiff is the prevailing party. The parties' settlement agreement states: "KCSOS-VOCS agrees that Parents are the prevailing party in OAH Case No. 2018050310 for the purposes of awarding reasonable attorney's fees and costs under 20 U.S.C. section 1415(i)(3)(8) and 34 C.F.R. section 300.517(a)(1)." ECF No. 16-5. Therefore, the Court finds that Plaintiff is the prevailing party for purposes of determining attorney's fees.

## C.  Hourly Rates

Plaintiff's counsel identifies her hourly rate as $500 in "the majority of [her] cases since 2018." ECF No. 16-11. The hourly rate for LOAM's paralegal is $150. ECF No. 16-6 at 1. Plaintiff's counsel has been practicing law since 1997. She has exclusively practiced in education and children's civil rights law for the past nineteen years. *See* Marcus Decl. ¶ 2. Defendant does not oppose Plaintiff's counsel's or LOAM's paralegal's hourly rates. Nevertheless, this Court must independently assess the reasonableness of an attorney's hourly rates when determining fees. *See Hensley*, 461 U.S. at 433, 436–47.

Attorney's fees are "based on rates prevailing in the community in which the action or proceeding arose for the kind and quality of services furnished." 20 U.S.C. § 1415(i)(3)(C); *see also Camacho v. Bridgeport Fin., Inc.*, 523 F.3d 973, 979 (9th Cir. 2008) (citing *Barjon v. Dalton*, 132 F.3d 496, 500 (9th Cir. 1997)) ("Generally, when determining a reasonable hourly rate, the relevant community is the forum in which the district court sits."). When determining a reasonable rate, "the district court should be guided by the rate prevailing in the community for similar work performed by attorneys of comparable skill, experience, and reputation." *Chalmers*, 796 F.2d 1210–11. The court may apply rates from outside the forum "if local counsel was unavailable, either because they are

unwilling or unable to perform because they lack the degree of experience, expertise, or specialization required to handle properly the case." *Barjon*, 132 F.3d at 500 (internal citation and quotation marks omitted). For example, several courts within the Eastern District of California have relied upon the prevailing hourly rates from the Central District of California when examining attorney's fees in IDEA litigation. *See, e.g.*, *Tehachapi Unified Sch. Dist. v. K.M.*, 16-cv-01942-DAD, 2019 WL 331153, at *4 (E.D. Cal. Jan. 25, 2019) (finding defendant demonstrated "scarcity of special education lawyers in the Eastern District of California"); *Wright v. Tehachapi Unified Sch. Dist.*, No. 16-cv-01214-JLT, 2017 WL 3334015, at *4–5 (E.D. Cal. Aug. 4, 2017) (finding plaintiff demonstrated that local counsel working in special education were not available), *aff'd* 743 F. App'x 125, 2018 WL 6068599 (9th Cir. Nov. 20, 2018).

In support of her asserted hourly rate, Plaintiff's counsel offers evidence of fee awards from IDEA litigation within the Central District of California. *See S.L. v. Upland Unified Sch. Dist.*, Nos. 12-55715, 12-56796, 2015 U.S. App. LEXIS 18756, at *6 (9th Cir. May 7, 2015 (awarding hourly rate of $525 for *appellate* work by an attorney with the same years of experience as Ms. Marcus); *see also Jay F. v. William S. Hart Union High School Dist.*, No. 16-cv-05117-TJH, at *4 (C.D. Cal. Jan. 24, 2018) (ECF No. 106) (finding $500 hourly rate reasonable for attorney with eleven years of experience)*; but see Wright v. Tehachapi Unified Sch. Dist.*, No. 17-16970, at *2 (9th Cir. Jan. 7, 2019). On January 25, 2019, Judge Drozd from the Eastern District of California awarded Plaintiff's counsel a $475 hourly rate for services rendered after January 2018. *See Tehachapi Unified Sch. Dist. v. K.M.*, No. 16-cv-01942-DAD, 2019 WL 331153, at *6 (reducing Ms. Marcus's requested $500 hourly rate to $475 based on Magistrate Judge Jennifer Thurston's prior award in another case and prevailing rates in the Central District of California).

Here, Ms. Marcus has twenty-two years of legal experience, nineteen of which were exclusively dedicated to "special education and children's civil rights law." Marcus Decl. ¶ 2. Plaintiff seeks attorney's fees for services rendered throughout 2018. ECF No. 16-6. KCSOS-VOCS has not objected

to Ms. Marcus's asserted rate of $500.

As noted above, the district court found a $500 hourly rate reasonable for a special education lawyer with eleven years of experience. *See Jay F.*, No. 16-cv-05117-TJH, at *4. Here, Ms. Marcus has eight more years of experience and is requesting the same hourly rate. Earlier this year, one court within the Eastern District of California awarded Ms. Marcus an hourly rate of $475 for her services rendered in IDEA litigation. *See K.M.*, No. 16-cv-01942-DAD, 2019 WL 331153, at *6. This Court finds that a $25 increase from the $475 hourly rate awarded to Ms. Marcus earlier this year is reasonable given inflation and the Central District of California's award of higher hourly rates to attorneys with less years of experience than Ms. Marcus in IDEA litigation. Accordingly, this Court will award Ms. Marcus a $500 hourly rate.

**D.** **Number of Hours to be Awarded**

The party seeking the award of fees has the burden of establishing that the fees requested are reasonable. *See Hensley*, 461 U.S. at 434, 437. Thus, a "fee applicant bears the burden of documenting the appropriate hours expended in the litigation and must submit evidence in support of those hours worked." *Gates v. Deukmejian*, 987 F.2d 1392, 1397 (9th Cir. 1992).

The court has an independent duty to review the evidence to determine the reasonableness of the hours requested in each case. *See Hensley*, 461 U.S. at 433, 436–37. A court "may not uncritically accept a fee request," but must review the time billed and determine whether it is reasonable in light of the work performed and the context of the case. *See Common Cause v. Jones*, 235 F. Supp. 2d 1076, 1079 (C.D. Cal. 2002); *see also McGrath v. County of Nevada*, 67 F.3d 248, 254 n.5 (9th Cir. 1995) (court may not adopt representations regarding the reasonableness of time expended without reviewing the record). A court may reduce the requested award where documentation of the expended time is inadequate. *See Hensley*, 461 U.S. at 433. "[H]ours that were not 'reasonably expended'" should be excluded from an award, including "hours that are excessive, redundant, or otherwise unnecessary." *Id.* at 434. The Court has discretion in determining whether the number of hours was reasonably expended.

*Cunningham v. Los Angeles*, 879 F.2d 481, 484–85 (9th Cir. 1988).

The Court calculates LOAM's invoice as follows:

140.9 hours for attorney Andrea Marcus at a $500 rate, equaling $70,450.

58.2 hours for paralegal Natalie Cummings at a $150 hourly rate, equaling $8,730.

Therefore, LOAM expended a total of 199.1 hours ($79,180) in services.

$12,123.18 in costs.

$91,303.18 for attorney's fees and costs.

ECF No. 16-6.

Plaintiff concedes Dr. Katz's $5,000 invoice should be deducted from LOAM's costs because Defendant paid Dr. Katz directly. ECF No. 16 at 17 n.1. Overall, Plaintiff's counsel seeks $86,303.18, excluding interest. ECF No. 17.

Defendant has asserted multiple arguments to reduce Plaintiff's attorney's fees award. The Court addresses each below.

**1.    Reasonableness of the Time Expended**

  **a.    Clerical Work**

Defendant argues that 62.4 hours of LOAM's billing entries comprise clerical work that should be reduced from an attorney's fees award. ECF No. 19 at 10–15. For example, Ms. Marcus billed 0.5 hours for creating a table of contents for a hearing. ECF No. 16-6 at 7. Courts have held that this constitutes clerical work that is not recoverable in an attorney's fees motion. *See Cappucio v. Pepperdine Univ.*, No. 13-cv-3125-DSF, 2014 WL 12573366, at *5 (C.D. Cal. Sept. 17, 2014) ("No reasonable client would pay attorneys' fees . . . for drafting a table of contents, a task that can be completed in minutes through relatively mundane word processing commands. This is a clerical task at best."); *BlueEarth Biofuels, LLC v. Hawaiian Elec. Co.*, No. 09-00181-LEK, 2014 U.S. Dist. LEXIS 185304, at *37 (D. Haw. Dec. 29, 2014) ("Work completed on a table of contents/table of authorities is clerical"). Accordingly, this Court will deduct 0.5 hours of Ms. Marcus's time for creating the table of

contents.

Defendant also contests 0.7 hours of LOAM's paralegal's time e-filing the amended complaint, motion to amend, motion to change venue, settlement agreement, notice to vacate hearing, and explanation of late settlement. ECF No. 19 at 10–15; ECF No. 19-4 at 10, 13, 18. Filing is generally viewed as a clerical task. *Nadarajah v. Holder*, 569 F.3d 906, 921 (9th Cir. 2009). Regarding several e-filing entries, Plaintiff concedes that it "would be fair to remove this entry, as it may be considered clerical." ECF No. 20-2 at 22, 29, 33. Therefore, the Court will reduce 0.7 hours of LOAM's entries as indicated in the chart below.

Moreover, Defendant disputes LOAM's paralegal's 0.1 hours billed for correspondence with expert witnesses to inform them of the vacated hearing. ECF No. 19-4 at 18. The Court agrees that informing expert witnesses that a hearing has been vacated is a clerical task that does not require the skill of a paralegal. Thus, the Court will deduct 0.1 hours of LOAM's paralegal time for this correspondence.

The Court notes that Ms. Marcus's billing entries for items like "Email Correspondence: Regarding [A.C.]" are vague and insufficient to properly determine an award for attorney's fees. *See, e.g.*, ECF No. 19-4 at 13–17. However, the Court has reviewed Ms. Marcus's explanations for these entries (*e.g.*, preparation for hearing) and is satisfied that the time expended was reasonable in light of the close proximity between these initially vague entries and the hearing dates. *See generally* ECF No. 20-2.

Based on reviewing LOAM's billing invoice, the Court breaks down its deductions below for clerical work:

| Clerical Work | | | |
|---|---|---|---|
| Date | Performed By | Description | Time |
| 03/05/18 | Paralegal | Reviewed transcripts for accuracy of timestamps. Edited transcripts.[1] | 0.5 |

---

[1] Reviewing accuracy of timestamps should not be billed at a paralegal rate of $75 for 0.5 hours.

| Clerical Work | | | |
|---|---|---|---|
| Date | Performed By | Description | Time |
| 03/05/18 | Paralegal | Editing transcript of March 2017 IEP.[2] | 0.8 |
| 03/27/18 | Paralegal | Edited transcription.[3] | 0.7 |
| 04/07/18 | Paralegal | Correspondence re accuracy of transcription for July 2017.[4] | 0.1 |
| 06/04/18 | Marcus | Created Table of Contents for Evidence needed for hearing.[5] | 0.5 |
| 06/11/18 | Paralegal | Efiled and emailed opposing counsel First Amended Complaint and Motion to Amend. | 0.1 |
| 07/30/18 | Marcus | Email Correspondence: address for subpoenas.[6] | 0.1 |
| 07/31/18 | Paralegal | Email Correspondence: Process Service Fee for One Legal[7] | 0.1 |
| 08/01/18 | Paralegal | Prepared subpoenas and subpoenas duces tecums in preparation for hearing.[8] | 1.2 |
| 08/01/18 | Marcus | Filed Student's Motion for A Venue in San Diego. | 0.1 |
| 08/01/18 | Paralegal | Filed final motion to change venue with opposing counsel via email and OAH via efiling. Filed letter for change of venue with OAH efiling. | 0.2 |
| 08/01/18 | Paralegal | Researched serving companies for subpoenas (0.3). | 0.0[9] |
| 08/01/18 | Paralegal | Corresponded with serving companies regarding serving subpoenas. | 0.2 |
| 08/06/18 | Paralegal | Correspondence: served and filed and last edit of PHC Statement. | 0.6 |
| 08/07/18 | Paralegal | Email Correspondence: w/ Transcriptionist[10] | 0.1 |
| 08/07/18 | Marcus | Filed with OAH efiling system and opposing counsel. | 0.1 |

[2] While the Court accepts Plaintiff's explanation that the March 2017 IEP is related to this case, it is unclear from the record why Plaintiff edited a transcript from March 2017 almost one full year later. ECF No. 20-2 at 2.

[3] This vague billing entry also fails to justify an hourly billing rate of $150.

[4] The Court agrees with Plaintiff's explanation that accuracy of the transcripts were imperative since Plaintiff sought to submit them into evidence. ECF No. 20-2 at 6. However, Plaintiff does not explain why it analyzed the accuracy of a transcript nearly nine months later.

[5] *See Cappucio*, No. 13-cv-3125-DSF, 2014 WL 12573366, at *5.

[6] *See Compass Bank v. Morris Cerullo World Evangelism*, No. 13-cv-0654, 2015 WL 3442030, at *8 (S.D. Cal. May 28, 2015) (reducing billing entries for drafting revised subpoena, preparing instructions for service, and phone calls and e-mails to reschedule deposition).

[7] *See id.*

[8] *See id.*

[9] Plaintiff's counsel wrote off this time entry from 0.3 to 0 in the invoice.

[10] Plaintiff clarifies in its reply that this was an e-mail correspondence between the paralegal and the transcriptionist to obtain hearing transcripts. This task is clerical and should not be billed at a paralegal rate.

| Clerical Work | | | |
|---|---|---|---|
| **Date** | **Performed By** | **Description** | **Time** |
| 08/08/18 | Paralegal | Prepared revised letters for witnesses re subpoenas (.6); served subpoenas via certified mail at Post office (.4); Travel time to Post Office to mail subpoenas (.2). | 1.2 |
| 08/13/18 | Paralegal | Preparing subpoenas based on new hearing dates (1.3); preparing letter to accompany subpoenas (1.2). | 2.5 |
| 08/13/18 | Paralegal | Travel time to Post Office to mail subpoenas via certified mail (.2); prepared certified mail and signature required documents for postal office (.3). | 0.5 |
| 08/15/18 | Paralegal | Created PDF documents for evidence. | 0.2 |
| 08/16/18 | Paralegal | Reviewed signature confirmation(s) from subpoenas for San Diego Center for Children. | 0.1 |
| 08/21/18 | Paralegal | Sent OAH efile and Schools Legal the settlement agreement and notice to vacate hearing. | 0.2 |
| 08/21/18 | Paralegal | E-filed the explanation of late settlement with OAH and sent to Schools Legal via email correspondence. | 0.2 |
| 08/21/18 | Paralegal | Correspondence with expert witnesses regarding vacating hearing. | 0.2 |
| | | **Total Marcus** | 0.8 |
| | | **Total Paralegal** | 9.7 |
| | | **0.8 x $500** | $400 |
| | | **9.7 x $150** | $1,455 |
| | | **Total Deduction from Award** | $1,855 |

Aside from the above noted entries, the Court has reviewed the remaining billing entries and finds that none of them are clerical.

### b. Work on Other Matters

Defendant contests LOAM's time entries that purportedly involve administrative proceedings unrelated to the specific due process matter at issue. While courts should eliminate hours spent on tasks unrelated to the case at issue, courts must also carefully distinguish time spent on "unrelated" claims from "time . . . devoted generally to the litigation as a whole." *See Sorenson v. Mink*, 239 F.3d 1140, 1147 (9th Cir. 2001) (upholding grant of attorney's fees where all of plaintiffs' claims were related and focused on improving Oregon disability determination system); *Wright*, No. 16-cv-01214, 2017 WL 3334015, at *15 (deducting time in IDEA litigation for hours expended on tort claim and school district's compliance with another IDEA administrative proceeding); *Gauchat-Hargis v. Forest River,*

1    *Inc.*, No. 11-cv-02737-KJM, 2013 WL 4828594, at *4 (E.D. Cal. Sept. 2013) (deducting hour of time

2    regarding letter for unrelated matter and never delivered to opposing counsel).  Indeed, cases with

3    multiple claims involving a "common core of facts" that are "based on related legal theories" often

4    "cannot be viewed as a series of discrete claims."  *Gauchat-Hargis*, No. 11-cv-02737-KJM, 2013 WL

5    4828594, at *5.

6         Defendant contends that 23.2 hours of LOAM's time entries are unrelated to the administrative

7    proceeding at issue.  ECF No. 19 at 16–19.  The Court has carefully reviewed the contested time entries.

8    The billing entries involve A.C.'s residential placement, the status of her mental health supports,

9    reviewing A.C.'s functional behavior assessment data, reviewing prior motions and researching potential

10   claims in preparation for drafting the due process complaint at issue, inquiring with clients regarding

11   reimbursements from Defendant, analysis of prior IEP hearings regarding requested relief in the due

12   process proceeding at issue, and resolution session preparation.  *See id.*

13        A.C.'s housing, the status of her various mental health needs, and Defendant's reimbursements

14   to the family for A.C.'s needs are squarely at issue in this matter.  The Court also finds reasonable

15   Plaintiff's counsel's review of prior complaints and motions for exhaustion and issue preclusion

16   considerations in preparation for drafting the instant due process complaint.[11]  Moreover, LOAM's

17   review of the parties' prior statements is reasonable to assess witnesses' credibility, develop due process

18   hearing examination questions, and prepare Plaintiff's witnesses for testimony.  *See generally* ECF No.

19   20-2.  Therefore, the Court will not deduct 15.4 hours on the grounds that the work was unrelated to the

20   administrative proceeding at issue.

21        The Court also recognizes an e-mail correspondence between Plaintiff's and Defendant's counsel

22   regarding a potential resolution session.  ECF No. 20-7.  Notably, when Plaintiff's counsel sent an e-

23   mail on July 19, 2018 regarding waiver of a resolution session, Defendant's counsel wrote, "I was

24

25   _____

[11] Indeed, Defendant has raised issue preclusion in prior matters.  *See* ECF No. 19 at 8.

thinking we could waive one, but hold the other. *They are all the same case* so no need for multiple resolution sessions. We can hold one on the newest case only and resolve all the newest due process cases."[12]  *Id.* at 2 (emphasis added).  Thus, Defendant's counsel appears to agree that Plaintiff's multiple due process complaints "are all the same case" and were appropriate at the time for a single resolution session.  *See id.*  The Court will not reduce the 7.8 hours involving the resolution session that Defendant contends is unrelated.  Overall, the Court rejects Defendant's argument that LOAM's billing entries included work for matters unrelated to the instant matter.  No reduction is necessary.

### c.  Inter-Office Communications

Defendant argues for a 12.1-hour reduction in hours based on "inter-office entries" in LOAM's invoice.  ECF No. 19 at 19.  "[M]any courts" have "reduced fee awards for time spent in 'interoffice conferences' or other internal communications."  *Gauchat-Hargis v. Forest River, Inc.*, No. 11-cv-02737-KJM, 2013 WL 4828594, at *2 (E.D. Cal. Sept. 9, 2013) (reducing attorney's fees for double and triple-billing for 109 internal conferences).  The participation of more than one attorney, however, "does not necessarily constitute an unnecessary duplication of effort."  *McGrath v. Nevada*, 67 F.3d 248, 256 (1995) (quoting *Kim v. Fujikawa*, 871 F.2d 1427, 1435 n.9 (9th Cir. 1989)).  Indeed, "it is not the court's place to micromanage the prosecution of the case, or its staffing."  *Gauchat-Hargis*, 11-cv-02737-KJM, 2013 WL 4828594, at *4.

This Court has reviewed the nine "inter-office entries" Defendant disputes and concludes that none are "excessive, redundant, or otherwise unnecessary."  *See Hensley*, 461 U.S. at 434.  For example, Ms. Marcus and LOAM's paralegal both participated in a 3.7-hour meeting in preparation for the anticipated administrative hearing.  ECF No. 16-6 at 12.  In light of the multi-day administrative, trial-like hearing that was supposed to take place,[13] this Court finds that it is reasonable for an attorney and

---

[12] Based on the Court's review of the record, the "newest due process cases" as of the date of this e-mail, July 19, 2018, were OAH 2018050310 and OAH 2018070796.

[13] In the reply brief, Plaintiff describes the administrative hearing as expected to last between six to eight days, with

her paralegal to expend such efforts in preparation for the hearing.

Defendant also takes issue with both Ms. Marcus's and LOAM's paralegal's 1.7 hours billed for preparing for and attending the prehearing conference. ECF No. 19 at 20. Given both Ms. Marcus's and LOAM's paralegal's work throughout the course of this case, this Court also finds that both of their time expended on the prehearing conference is reasonable. *See Gauchat-Hargis*, 11-cv-02737-KJM, 2013 WL 4828594, at *4 ("it is not the court's place to micromanage the prosecution of the case, or its staffing"). Unlike in *Gauchet-Hargis*, where the court reduced attorneys' fees that included 109 internal conferences, here, however, Defendant only identifies nine internal conferences. *See Gauchet-Hargis*, 11-cv-02737-KJM, 2013 WL 4828594, at *4; ECF No. 19 at 19–20. The Court is unpersuaded that these few internal conferences are unreasonable. The Court has reviewed the remaining disputed time entries involving inter-office communications and concludes that no further deductions are necessary.

**d.    Unsuccessful Motion**

Defendant argues that 5.9 hours related to Plaintiff's motion to change venue should be deducted because the motion was "unsuccessful" and was "not substantially related to the remainder of the case." ECF No. 19 at 20. "It is well-settled that a prevailing plaintiff may be compensated for lost battles along the way to winning the war: '[A] plaintiff who is unsuccessful at a stage of litigation that was a necessary step to her ultimate victory is entitled to attorney's fees even for the unsuccessful stage.'" *Pierce v. Orange*, 905 F. Supp. 2d 1017, 1032 (C.D. Cal. 2012) (granting attorney's fees on unsuccessful summary judgment motions where plaintiffs prevailed at trial) (quoting *Cabrales v. Los Angeles*, 935 F.2d 1050, 1053 (9th Cir. 1991)); *see also Aviation Fin. Grp., LLC v. DUC Hous. Partners, Inc.*, No. 08-cv-535, 2010 WL 3613897, *3–4 (D. Idaho Sept. 8, 2010) (awarding attorney's fees despite unsuccessful motion to change venue and summary judgment motion).

---

Plaintiff's case-in-chief anticipated to take four days. ECF No. 20 at 10–11. The administrating hearing would have included nearly a dozen witnesses and hundreds of pages of documentary evidence. *Id.*

Here, Defendant contests 5.9 hours expended on the motion to change venue. In reply, Plaintiff argues this motion was necessary to achieve "cooperation of the witnesses from San Diego Center for Children ('SDCC'), who strongly resisted being subpoenaed to travel 4-5+ hours each way, given traffic, to testify in Bakersfield." ECF No. 20 at 9–10. The Court is aware that a "subpoena cannot be enforced by the Office of Administrative Hearings ('OAH') in the administrative process."[14] *Id.*

Regardless of the motion's success, the Court is persuaded by Plaintiff's explanation for filing the motion to change venue to secure the witnesses' attendance at the administrative hearing, especially where the OAH does not have authority to enforce the subpoena. *See* State of Cal., Office of Admin. Hearings, *Subpoenas*, https://www.dgs.ca.gov/OAH/case-types/special-education/self-help/subpoenas. The Court, however, recognizes that 0.2 hours for Ms. Marcus's e-filing of the venue motion and reply in support of the venue motion are considered "clerical." Therefore, 0.2 hours of Ms. Marcus's time will be deducted (as noted in the Section III.D.1.a. chart). No other deductions regarding the motion to change venue are necessary.

### e. <u>Plaintiff Did Not Unreasonably Protract Final Resolution</u>

A court may also reduce attorneys' fees when a parent "unreasonably protracted the final resolution of the controversy." 20 U.S.C. §1415(i)(3)(E). Defendant contends that Mr. Cortes protracted litigation in this case. ECF No. 19 at 21. Defendant bases its argument on LOAM's billing showing that her office continued reviewing and editing the settlement agreement on August 20, 2018, and the language had not been finalized until 7:00 p.m. that same day. *Id.* This Court is not persuaded that LOAM's review and editing of the settlement agreement up until the time it is signed constitutes unreasonably protracted litigation. Therefore, the Court will not reduce LOAM's hours on this basis.

---

[14] Plaintiff cites https://www.dgs.ca.gov/OAH/case-types/special-education/self-help/subpoenas to support this statement. ECF No. 20 at 10. The State of California website provides: "A subpoena can be enforced by seeking a contempt order from the Superior Court in the county where the hearing is held. Because obeying a subpoena is required by state law, they cannot be enforced by OAH in the administrative process." State of Cal., Office of Admin. Hearings, *Subpoenas*, https://www.dgs.ca.gov/OAH/case-types/special-education/self-help/subpoenas.

### f. **Plaintiff Obtained Substantial Relief**

It is well settled that the degree of success is an important factor when determining attorney's fees. *See Hensley*, 461 U.S. at 436. Defendant's argument also implies that the Court should reduce Plaintiff's attorney's fees based on § 1415(i)(3)(D)(i). ECF No. 19 at 22. Fees and costs may not be awarded for services performed after receiving a written settlement offer if:

> (I) the offer is made within the time prescribed by Rule 68 of the Federal Rules of Civil Procedure or, in the case of an administrative proceeding, at any time more than 10 days before the proceeding begins;
>
> (II) the offer is not accepted within 10 days; and
>
> (III) the court or administrative hearing officer finds that the relief finally obtained by the parents is not more favorable to the parents than the offer of settlement.

20 U.S.C. § 1415(i)(3)(D)(i)(I)–(III). "Notwithstanding subparagraph (D), an award of attorneys' fees and related costs may be made to a parent who is the prevailing party and who was substantially justified in rejecting the settlement offer. *Id.* § 1415(i)(3)(E).

Defendant contends that Plaintiff's relief is not substantial because the "necessary residential placement . . . has been offered since November 2017." ECF No. 19 at 22. Defendant further contends that it had already agreed to providing a transition assessment and an "IEE in Psycho-Educational." *Id.* Defendant argues that there were no outstanding invoices requiring reimbursement, and therefore, the "IEE in Speech and Language is the only evaluation Student received pursuant to this Settlement Agreement." *Id.*

There are several problems with Defendant's contentions. First, Defendant does not direct the Court to evidence showing it offered terms more favorable than the settlement agreement in November 2017. The closest evidence the Court could find, which would fall within the Section 1415(i)(3)(D)(i) timeframe, was defense counsel's declaration stating, "[o]n May 3, 2018, KCSOS-VOCS offered to fund an IEE by Dr. Katz" and "[o]n June 8, 2018, KCSOS-VOCS offered to also fund the Transitional Assessment." Gutcher Decl. ¶ 14. However, Mr. Cortes claims that on June 8, 2018, the Special

Education/Alternative Education Principal, Sheriden Prince, agreed to the transition assessment, but denied the IEE for speech and language; the IEE for an FBA; an inclusion assessment; and request for family therapy. ECF No. 16-3 at 11. Mr. Prince also agreed to locate a therapist near the SDCC, but did not specify whether it would meet the family's requests for therapy twice a week. *See id.* at 11–12. Thus, the Court finds that Defendant has not substantiated that it offered terms more favorable than the settlement agreement in November 2017 or May 2018.

Additionally, Defendant argues that "[t]here are no outstanding invoices and, thus, the Agreement to [reimburse outstanding invoices] was perfunctory." ECF No. 19 at 22. However, Plaintiff notes that "Defendant has still failed to provide the outstanding mileage and per diem owed A.C.'s family." ECF No. 20 at 12. Therefore, the Court rejects Defendant's contention that Plaintiff's relief is not substantial based on the lack of outstanding invoices.

Despite Defendant's contentions that it offered a residential placement, a transition assessment, and an "IEE in Psycho-Educational," Plaintiff obtained substantial relief in the settlement that Defendant does not contend it previously offered, including: (1) educationally related compensatory transitional services recommended in the assessment if the IEE transition assessment finds deficits; (2) educationally related compensatory education as recommended by Dr. Katz in his current IEE for the 2018 Extended School Year Absence, including Defendant's acknowledgement that family therapy is educationally related for purposes of the settlement agreement; (3) educationally related compensatory speech and language services recommended in the Speech and Language IEE if the assessment finds deficits; (4) an IEP within 20 days of completing the IEEs to address A.C.'s needs outlined in the assessments; (5) other educationally related compensatory education, if recommended by Dr. Katz in his IEE Assessment of A.C.; and (6) compensatory educationally related mental health services recommended by Dr. Katz's IEE. *See generally* ECF No. 16-3; ECF No. 16-5 at 4–6; ECF No. 19 at 21–22; ECF No. 19-1.

Indeed, Plaintiff asserts that the settlement agreement's provisions for "fund[ing] whatever intervention, supports and services those private assessments recommended" was "[o]f most value to

17

1 [A.C.]," given that it "has resulted in extensive therapy, family counseling, and funding for family visits

2 once per month, among other services recommended." ECF No. 20 at 12.

3   A careful review of the record shows Plaintiff received substantial relief. Therefore, no

4 reductions are warranted on this ground.

5     **g.**  **Alleged Boilerplate Language**

6   Defendant argues that the Court should reduce Ms. Marcus's hours for working on the due

7 process complaint, amended complaint, motion to amend, and the pre-hearing conference statement

8 because they contain boilerplate language. ECF No. 19 at 23.

9   Defendant first directs the Court to Plaintiff's complaints filed in "Due Process #4,"[15] the due

10 process proceeding at issue, and "Due Process #5,"[16] a due process proceeding that Plaintiff filed against

11 Defendant on July 16, 2018. ECF No. 19 at 7–8, 23; ECF No. 19-8; ECF No. 19-9. In particular,

12 Defendant identifies billing entries that seemingly relate to Due Process #4. Defendant does not argue

13 that the complaint from Due Process #4 contains boilerplate language from a ***prior*** complaint. *See*

14 *generally* ECF No. 19. Nothing in Plaintiff's billing entries suggest LOAM billed Defendant for

15 drafting the Due Process #5 complaint.[17] *See generally* ECF No. 19-4. Therefore, the Court will not

16 reduce LOAM's time on this basis.

17   Defendant next directs the Court to the original due process complaint and the amended due

18 process complaint. ECF No. 19 at 23; ECF No. 19-8; ECF No. 19-10. Defendant argues that much of

19 the amended due process complaint "contains largely the same information as the Due Process

20 Complaint, but has three additional pages of facts. Ms. Marcus charged 2.5 hours for the additional

21 three pages." ECF No. 19 at 23; ECF No. 19-8; ECF No. 19-9.

22 _____

23 [15] OAH 2018050310.

24 [16] OAH 2018070796.

25 [17] This Court does not make the determination whether the Due Process #5 complaint is identical to the Due Process #4 Complaint.

18

The Court has closely reviewed Ms. Marcus's billing invoice, the original due process complaint, and the amended complaint. Despite Defendant's contention, LOAM only billed two hours for drafting the amended complaint. ECF No. 19-4 at 9.[18] The amended complaint contains four additional pages of facts, including dense, single-spaced paragraphs containing highly specific requested relief for A.C. at a prior IEP. The Court finds that two hours is more than reasonable for drafting the amended complaint. The Court will not reduce LOAM's hours on this basis.

Lastly, Defendant argues that LOAM's pre-hearing conference statement in this case is "nearly identical" to a pre-hearing conference statement filed in a *subsequent* case. ECF No. 19 at 24. Again, Defendant does not argue that the pre-hearing conference statement from this case contains boilerplate language from a *prior* submission. *See generally* ECF No. 19. Nothing in Plaintiff's billing entries suggest LOAM billed Defendant for time drafting the subsequent pre-hearing conference statement. *See generally* ECF No. 19-4; ECF No. 19-12. Therefore, no reductions on this ground are warranted.

### h.    Post-Settlement Work

Defendant argues that Plaintiff's time entries from August 21, 2018 should be reduced because the entries took place "AFTER the Settlement Agreement was signed." ECF No. 19 at 24 (emphasis in original). In response, Plaintiff contends that "Plaintiff's billing system does not represent billing in chronological order within a day. August 21, 2018 entries were not in chronological order. (Dates are in chronological order) Hearing preparation was completed before Defendant signed settlement agreement." ECF No. 20-2 at 44–45.

Plaintiff signed the settlement agreement on August 20, 2018, and Defendant signed it on August 21, 2018. ECF No. 16-5 at 9–10. Plaintiff also asserts that Plaintiff's counsel was required to continue preparing for the administrative hearing because Defendant did not sign the settlement agreement until

---

[18] The additional 0.5 hours Defendant contends are related to drafting the amended complaint are actually related to client preparation regarding the amended complaint at an upcoming hearing. ECF No. 19-4 at 9. Thus, the Court rejects Defendant's contention that LOAM billed 2.5 hours for drafting three additional pages of facts.

the eve of the hearing. ECF No. 16 at 14, 24, 32. Thus, the Court finds LOAM's hours expended in preparation for the hearing are reasonable. No deductions are called for under these circumstances.

The Court, however, has reviewed LOAM's paralegal's 0.2 hours billed for e-filing an explanation of late settlement with the OAH on August 21, 2018, and finds that this service is "clerical." *Nadarajah*, 569 F.3d at 921. Accordingly, this 0.2 has been deducted as addressed in Section III.D.1.a. of this Order. Given Plaintiff's explanation regarding counsel's billing system and necessary preparation for the administrative hearing, this Court finds that the remaining entries from August 21, 2018 are reasonable.

### i.   Dr. Katz's Invoice

Defendant argues that a $5,000 invoice for Dr. Katz's services should be eliminated from Plaintiff's costs because Defendant paid Dr. Katz directly. ECF No. 19 at 24. Plaintiff concedes it erroneously added Dr. Katz's invoice, and therefore does not seek recovery for this $5,000. ECF No. 16 at 17 n.1. Thus, Plaintiff shall not recover $5,000 for Dr. Katz's services.

### E.   Costs

"Plaintiffs are entitled to their . . . costs as part of an award of fees . . . . Even though not normally taxable as costs, out-of-pocket expenses incurred by an attorney which would normally be charged to a fee paying client are recoverable as attorney's fees." *Chalmers*, 796 F.2d at 1216. Plaintiff seeks reimbursement for $7,123.18[19] in costs related to the administrative proceedings. ECF No. 16-6 at 17; ECF No. 17 at 1. Specifically, Plaintiff seeks reimbursement for: (1) $606.07 for two transcripts and two transcriptions; (2) $128.90 for an Air BnB on June 27, 2018; (3) $77.40 for mailing subpoenas; (4) $2,388 for copies and binders; (5) $79.81 for mailing binders to defense counsel; and (6) $3,843 for

---

[19] This figure excludes the $5,000 for Dr. Katz's invoice that Defendant paid directly to Dr. Katz.

Vikki Rice's[20] invoice. ECF No. 16-6 at 17–18. Defendant does not contest these costs. *See generally* ECF No. 19. Therefore, the Court concludes that Plaintiff is entitled to a total of $7,123.18 in reimbursements for costs.

**F.**     **Interest**

Lastly, Plaintiff seeks 10% interest on attorney's fees accruing from the settlement date. ECF No. 16 at 32–34; ECF No. 17 (citing Cal. Civ. Proc. Code § 685.010 ("Interest accrues at the rate of 10 percent per annum on the principal amount of a money judgment remaining unsatisfied"); *id.* § 685.020(a) ("interest commences to accrue on a money judgment on the date of entry of the judgment"); Cal Const. art. XV, § 1). Defendant's opposition is silent as to Plaintiff's request for interest. *See generally* ECF No. 19. The settlement agreement provides:

> Within five (5) business days of the date upon which [Defendant] receives a billing statement from [LOAM] for legal services incurred prior to and including the date of acceptance of the settlement offer, based upon a detailed time and hours invoice . . . [Defendant] shall either [a] agree to pay Ms. Marcus's invoice in full within 45-days, or [b] notify her that it is refusing to pay the invoice . . . . If the parties cannot agree on the amount of the fees and costs, the amount may be determined by a State or Federal Court. . . . [Defendant] will pay to [LOAM] any fees and costs . . . ordered by a court . . . within 30 days of the . . . order.

ECF No. 16-5 at 6. LOAM sent a $91,303 invoice to Defendant on September 6, 2018.[21] ECF No. 16 at 16. On September 11, 2018, Defendant offered $7,500 as full payment for LOAM's invoice. *Id.* at 16–17.

Neither party has identified cases within the Eastern District of California where courts have awarded post-judgment interest on attorney's fees in IDEA matters. Several district courts within the District of Columbia have awarded post-judgment interest on attorney's fees awards in IDEA litigation. *See, e.g.*, *Bailey v. District of Columbia*, 839 F. Supp. 888, 892–93 (D.D.C. 1993) (allowing interest award on attorney's fees based on statutory rate, accruing from date of summary judgment order, when

---

[20] The record shows that Vikki Rice is an advocate for the Cortes family. ECF No. 16-3 at 6.

[21] Plaintiff states that LOAM informed Defendant to deduct $5,000 from LOAM's invoice because Defendant paid Dr. Katz directly. ECF No. 16 at 16–17.

it became "relatively certain" defendants would be liable for attorney's time at approximately $200 per hour despite expected dispute over rate), *abrogated on other grounds in Fisher ex rel. Fisher v. District of Columbia*, 517 F.3d 570, 572–73 (D.C. Cir. 2008); *Brown v. District of Columbia*, 80 F. Supp. 3d 90, 102 (D.D.C. 2015) (awarding post-judgment interest calculated at applicable statutory rate for balance due and owing from 91 days from date of court's summary judgment order in IDEA matter).

The Court is aware of *Akinseye v. District of Columbia*, 339 F.3d 970 (D.C. Cir. 2003), in which the D.C. Circuit held the district court lacked subject matter jurisdiction where the parties settled the underlying IDEA administrative proceeding and plaintiff accepted Defendants' late, but voluntary, fee payments. *Akinseye* is distinguishable from the case at bar because here, Mr. Cortes seeks recovery of attorney's fees under IDEA. Moreover, Mr. Cortes did not accept the Defendant's $7,500 offer for attorney's fees. Thus, *Akinseye* is inapplicable.

Plaintiff cites non-IDEA cases in support of awarding interest on attorney's fees "from the date the entitlement to fees is secured, rather than from the date that the exact quantity of fees is set." ECF No. 16 at 32–34; s*ee Finkelstein v. Bergna*, 804 F. Supp. 1235, 1239–40 (N.D. Cal. 1992); *Perkins v. Standard Oil Co.*, 487 F.2d 672, 674–76 (9th Cir. 1973) ("once a judgment is obtained, interest thereon is mandatory without regard to the elements of which that judgment is composed"); *Jenkins by Agyei v. Missouri*, 931 F.2d 1273, 1276–77 (8th Cir. 1991) (holding plaintiffs in desegregation case were entitled to post-judgment interest on attorney's fees accruing from the date the order entitled plaintiffs to those fees regardless of whether fee awards were quantified) (internal citation omitted).

In *Finkelstein*, the court held that interest on an attorney's fee award runs from the date the plaintiff became entitled to attorney's fees. *See Finkelstein*, 804 F. Supp. at 1239–40. The court reasoned "the prevailing attorney, having not been compensated for work that another attorney would have long since billed and collected upon, must be compensated for that delay [the intervening period between judgment and setting of fees], in order to put civil rights plaintiffs on equal footing with other potential clients in seeking representation." *See id.* at 1240. The *Finkelstein* court further noted that "to

hold otherwise would create a perverse incentive, where the defendants would be rewarded (through the continued use of funds) for any delay they were able to interpose in the process of determining fees." *See id.* at 1264 n.6; *see also Jenkins*, 931 F.2d at 1276–77 ("We also observe that if the accrual of post-judgment interest is delayed until fee awards are quantified and attorneys are thus not fully compensated for their successful efforts, they may be reluctant to take on complex and expensive litigation.").

The instant matter is slightly distinguishable because it involves the parties' settlement acknowledging Plaintiff's right to attorney's fees, rather than a court awarding attorney's fees. The Court interprets the judgment date in *Bailey*, *Brown*, *Finkelstein*, *Perkins*, and *Jenkins* is analogous to the date the parties agreed that Plaintiff was entitled to reasonable attorney's fees, regardless of whether those fees were quantified. *See Bailey*, 839 F. Supp. at 892–93; *Brown*, 80 F. Supp. 3d at 102; *Finkelstein*, 804 F. Supp. at 1239–40; *Perkins*, 487 F.2d at 674–76; *Jenkins*, 931 F.2d at 1276–77. Indeed, the Court is persuaded by the policy arguments set forth in *Finkelstein* and *Jenkins* regarding defendants' incentives to delay payments, thereby placing underserved plaintiffs on unequal footing with paying clients, especially in complex and expensive litigation in areas where there is a dearth of special education attorneys. Again, Defendant has not cited any authority to the contrary. Therefore, this Court determines that Plaintiff is entitled to interest on attorney's fees accruing from the settlement date, August 21, 2018.

Finally, Plaintiff cites several California statutes prescribing a 10% interest rate per annum. ECF No. 16 at 34. However, "[w]here the cause of action asserted arises from a federal statute, questions of the allowance of postjudgment interest in federal courts are governed solely by federal law." *Perkins*, 487 F.2d at 675 (holding 28 U.S.C. § 1961 applies). Thus, the applicable statutory authority for post-judgment interest in this matter is 28 U.S.C. § 1961. Accordingly, Plaintiff is entitled to interest on attorney's fees under 28 U.S.C. § 1961 accruing from August 21, 2018.

//

//

# IV. SUMMARY OF CALCULATIONS

Plaintiff seeks attorney's fees and costs for $86,303.18, excluding interest. ECF No. 17. Of Ms. Marcus's 140.9 hours billed at a $500 rate, the Court deducts 0.8 hours for her work on clerical matters. Thus, Ms. Marcus's revised total hours are 140.1. This results in an award for $70,050. Of Ms. Cummings's 58.2 hours billed at a $150 rate, the Court deducts 9.7 hours for her work on clerical matters. Therefore, Ms. Cummings's revised total hours are 48.5. This equals to $7,275.

LOAM's services amount to $77,325. Costs are $7,123.18 without Dr. Katz's invoice. Thus, Plaintiff shall be awarded $84,448.18 in attorney's fees and costs, plus interest at the statutory rate.

# V. CONCLUSION AND ORDER

Based on the foregoing, Plaintiff's motion for attorney's fees and costs (ECF No. 16) is GRANTED in part, and DENIED in part. Accordingly, Plaintiff is awarded a total of $84,448.18 in attorney's fees and costs, plus interest accruing from August 21, 2018 at the statutory rate. Per the parties' settlement agreement, Defendant shall pay LOAM the awarded fees, costs, and interest within 30 days of this Order. ECF No. 16-5 at 6.

IT IS SO ORDERED.

Dated:   **August 23, 2019**              **/s/ Lawrence J. O'Neill**
                                       UNITED STATES CHIEF DISTRICT JUDGE